IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT GENE REGA, )
    Petitioner, ) No. 2:13-cv-1781
)
v. )
)
JOHN E. WETZEL, et al., )
    Respondents. )

## **MEMORANDUM OPINION**

CONTI, Chief District Judge.

Pending before the court is a motion for discovery (ECF No. 7) filed by the petitioner, Robert Gene Rega ("Rega"). The respondents oppose Rega's motion. For the reasons set forth below, the court will deny it.

**I.**     **Rega's Request for Discovery in This Federal Habeas Case**

In June 2002, Rega was tried on charges of homicide and related crimes in the Court of Common Pleas of Jefferson County on consolidated cases docketed at CP-33-CR-26-2001 and CP-33-CR-524-2001 (the "capital case").[1] The jury convicted him of first-degree murder, robbery, burglary, theft by unlawful taking or disposition, aggravated assault, criminal mischief, unlawful restraint, theft by receiving stolen property, and criminal conspiracy. At the conclusion of the penalty hearing on the first-degree murder conviction, the court imposed a sentence of death.

---

[1]     The Clerk of Court for Jefferson County transmitted to this court the state court record ("SCR") for Rega's capital case. It contains the court's file for both CP-33-CR-26-2001 and CP-33-CR-524-2001. Rega cites to the documents from the CP-33-CR-26-2001 file. This court will do the same. A document from that file shall be identified herein as "SCR No." followed by the docket number of the document being cited.

1

In May 2003, Rega was tried on unrelated sexual offense charges in the Court of Common Pleas of Jefferson County at a case docketed at CP-33-CR-174-2001 (hereinafter referred to as the "rape case"). The jury in this case convicted Rega of fifty-one counts, including rape, statutory sexual assault, indecent sexual assault, involuntary deviate sexual intercourse, indecent assault, and selling or furnishing liquor to minors.

The District Attorney of Jefferson County, Jeffrey D. Burkett, prosecuted both the capital case and the rape case. Raymond Fishel ("Fishel"), Shawn Bair ("Bair"), and Michael Sharp ("Sharp") testified as prosecution witnesses in the capital case. Susan Jones ("Jones") testified as a prosecution witness in both the capital case and the rape case.

In the petition for a writ of habeas corpus that Rega filed with this court pursuant to 28 U.S.C. § 2254, he challenges his convictions and death sentence in the capital case. Among his many contentions is that his due process rights were violated pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and Napue v. Illinois, 360 U.S. 264 (1959), and their progeny. Specifically, in Claim I of his petition, Rega contends that the District Attorney suppressed material impeachment evidence relating to Jones, Fishel, Bair, and Sharp (hereinafter referred to collectively as the "Witnesses" and individually by name or as "each Witness"). In Claim II, Rega contends that the District Attorney actively misled the jury about plea negotiations with the Witnesses and then exploited that false and misleading testimony in closing arguments.

In his motion, Rega seeks discovery on Claims I and II. He requests that the respondents review the following files of the District Attorney's Office:

(a) regarding Jones: the files for Rega's capital case and rape case, and for Jones's criminal cases at Commonwealth v. Susan I. Jones, CP-33-CR-345-2001, CP-33-CR-346-2001, CP-33-CR-48-2003, and CP-33-CR-248-2003;

2

(b)	regarding Fishel: the files for Rega's capital case and for Fishel's criminal cases at Commonwealth v. Raymond Fishel, CP-33-CR-91-2001 and CP-33-CR-571-2001;

(c)	regarding Bair: the files for Rega's capital case and for Bair's criminal cases at CP-33-CR-27-2001, CP-33-CR-95-2001, CP-33-CR-97-2001and CP-33-CR-98-2001;

(d)	regarding Sharp: the files for Rega's capital case and for Sharp's criminal cases at Commonwealth v. Michael Sharp, CP-33-CR-424-2001 and CP-33-CR-425-2001.

(Pet's Mot. for Disc. (ECF No. 7) ¶ 8(a)-(d)). From these files, Rega requests that the respondents produce:

> All correspondence, memoranda, notes, records and/or any other documents or writings … concerning any conversations between [each Witness] (and/or [his/her] attorney) and Jefferson County District Attorney Jeffrey Burkett, any member of his staff, and/or any police officer, including but not limited to any correspondence, memoranda, notes, records and/or any other documents or writings that evidence plea negotiations and discussions, plea offers extended, formal or informal plea bargains entered into, Commonwealth-created expectations of leniency, possible rewards from the Commonwealth in exchange for [his or her] testimony, Commonwealth-created incentives and inducements to testify, possible agreements or arrangements between [each Witness] and the Commonwealth for leniency, implications and indications by the Commonwealth prior to trial that [his/her] cooperation would be rewarded, understandings between [each Witnesses] and the Commonwealth as to future prosecution, and Commonwealth-created opportunity for leniency expressly contingent on the Commonwealth's satisfaction with [his or her] testimony against Mr. Rega.

(Id.)

Rega sought this same information during the discovery phase of his state collateral proceeding, which he filed pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. § 9541 *et seq.* According to Rega, the District Attorney acknowledged that his office's files contained documents "that were responsive to [his] Brady-related discovery request," but he refused to produce the documents and instead moved for and was granted a protective order. (Pet's Mot. for Disc. (ECF No. 7) ¶¶ 4-5). Rega contends that in the PCRA

proceeding he was "denied disclosure of the exact discovery" he now seeks in this case. (Id. at 6).

The respondents oppose Rega's discovery requests. They describe the procedural background provided by Rega in his motion for discovery as "woefully incomplete" (Resp. to Pet's Mot. for Disc. (ECF No. 15) ¶ 2), and have had transcribed two on-the-record proceedings before the PCRA court regarding the discovery requests Rega made in his state case. They contend that once this court has an accurate understanding of the discovery conducted during the PCRA proceeding, it will deny Rega's present motion for discovery.

## II. Discussion

### A. Legal Standard for Obtaining Discovery in a Federal Habeas Case

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997); see Harris v. Nelson, 394 U.S. 286, 300 (1969) ("broad-ranging preliminary inquiry is neither necessary nor appropriate in the context of a habeas corpus proceeding."); Munoz v. Keane, 777 F.Supp. 282, 287 (S.D.N.Y. 1991) ("petitioners are not entitled to go on a fishing expedition through the government's files in hopes of finding some damaging evidence") (quoted with approval in Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir. 1994)). Discovery is authorized in Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Court only by leave of court upon a showing by the petitioner of "good cause," which may be made "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief[.]" Harris, 394 U.S. at 300; see Bracy, 520 U.S. at 908-09; Williams v. Beard, 637 F.3d 195, 209 (3d Cir. 2011) ("The

4

burden rests upon the petitioner to demonstrate that the sought-after information is pertinent and that there is good cause for its production."); Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir. 1991) ("bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery"); Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987) (same).

Importantly, the petitioner's "specific allegations" in support of discovery must be evaluated against the state court record. Incomplete or inaccurate allegations do not support a finding of good cause for discovery. See, e.g., Tedford v. Beard, No. 09-409, 2010 WL 3885207, at *8 (W.D. Pa. Sept. 28, 2010) (McVerry, J.) ("If the Court were to take Petitioner's allegations at face value, it might agree that they are specific enough to entitle him to discovery of the photographs at issue. The court will not do so, however, because a review of the transcript from the preliminary hearing shows that his paraphrasing of Officer Peter's testimony is inaccurate."). It is necessary, as respondents contend, to have an accurate understanding of what occurred during the discovery phase of Rega's PCRA proceeding.

### B. The Discovery Proceeding in Rega's PCRA Case

In 2009, Rega filed a motion for discovery with the Court of Common Pleas of Jefferson County (the "PCRA court"). (Pet's Mot. for Disc. in Commonwealth v. Rega, No. CP-33-CR-26-2001 (C.P. Jefferson Co., May 13, 2009), SCR No. 241). The PCRA court granted the discovery motion by signing the proposed order drafted by Rega's counsel. The order contained the broad directive that the District Attorney's Office was to produce "[a]ll documents relating to" each Witness that was contained in the files for Rega's capital case, his rape case (with respect to Jones), and each Witness's individual criminal cases "including but not limited to all

5

correspondence, memoranda, notes, reports, records[.]" (Order in <u>Commonwealth v. Rega</u>, No. CP-33-CR-26-2001 (C.P. Jefferson Co. June 15, 2009), SCR No. 244).

On July 31, 2009, the District Attorney filed a motion with the PCRA court for a protective order. He explained that he "sent to [Rega's] counsel a packet which contains those items which come within the purview" of the discovery order and to which he had no objection to disclosure. (Mot. for Protective Order in <u>Commonwealth v. Rega</u>, No. CP-33-CR-26-2001, ¶ 6 (C.P. Jefferson Co., July 31, 2009), SCR No. 250; <u>see</u> 8/4/09 Hr'g Tr. (ECF No. 15-1) at 10-18). In paragraph 4, the District Attorney stated:

> All of the documents which could possibly come within the purview of [the PCRA court's discovery order] fall into the following categories:
>
> (a) Police reports and other matter previously provided to the defendant;
>
> (b) Police reports of co-defendants' cases not involving the defendant (e.g. Susan Jones' Welfare Fraud case);
>
> (c) Correspondence relating to other cases that was no turned over to the defendant because he had no right or reason to have the same previously (e.g. correspondence to and from counsel for co-defendants);
>
> (d) Matters of public record (e.g. pleadings, magisterial docket info, etc.);
>
> (e) Purely internal administrative documents (plea and sentence note sheets, demographic data, contact information, etc.) which have no bearing on the instant matter;
>
> (f) Commonwealth Attorney's work product (notes, memoranda ,etc. which summarize the case and the Commonwealth Attorney's strategies, opinions, thoughts, impressions and conclusions about the same);
>
> (g) Notes (not verbatim accounts) taken during interviews of witnesses in anticipation of trial testimony;
>
> (h) Items which have been purged in the District Attorney's Office periodic purging of old cases (e.g. Susan Jones' cases filed at 345-2001 Cr. and 346-2001 Cr.; both of Michael Sharp's 2001 cases).

(Id.) The District Attorney pointed out that "broad-sweeping" discovery "is inappropriate" in a PCRA proceeding. (Id.) He argued that the items set forth in subparagraphs 4(a), (d), (e), (f) and (g) were not properly subject to discovery and that he could not produce the items identified in subparagraph 4(h). (Id., ¶¶ 5, 7-9). He requested that the PCRA court:

> schedule an *in camera* hearing to inspect the aforesaid items which the Commonwealth objects to disclosing so that the Court can determine if they should properly be disclosed. If the Court deems the items to not be discoverable, the Commonwealth would ask for a Protective Order to be issued by this Honorable Court.

(Id. at 3).

On August 4, 2009, the PCRA court held its first hearing on the matter. The District Attorney appeared in person and Rega's counsel participated via telephone. The District Attorney argued that a literal reading of the PCRA court's discovery order would require him to turn over "every single piece of paper with [each Witness's] name on it[.]" (8/4/09 Hr'g Tr. (ECF No. 15-1) at 16). He observed that since it was a post-conviction proceeding, Rega had to demonstrate "good cause" for discovery and was not entitled to the broad discovery reflected in the court's order. The District Attorney proposed that the scope of the discovery order "be limited to anything relating to [the Witnesses] and any plea negotiations, plea agreements, or correspondence regarding plea agreements or negotiations." (Id. at 7).

The District Attorney explained that his office has "boxes and boxes of materials" and that "many of these boxes have notes that are pages and pages long." (Id. at 13). He stated: "I have scanned them to try to find anything that has relevance to the issues in the PCRA. And I've tried to turn them all over." (Id. at 13-14). The District Attorney said that he believed that in the packet of discovery that he sent to Rega's counsel he "turned over … anything dealing directly or remotely or indirectly with plea negotiations that I had in my file." (Id. at 13).

7

The District Attorney also reiterated that he did not object to producing the items set forth in subparagraphs 4(b) and (c) of his motion for protective order and stated to Rega's counsel:

> I sent you the entire police report and everything involving Susan Jones' welfare fraud case, simply because that's not something you would have ever had before. Because it had nothing to do with the Gateway Lodge [the capital case] or Mr. Rega's sex case [the rape case]. So it was a completely separate file. Her docket number was listed in the Order, so I sent it to you in its entirety. So I'm not objecting to that.
> As far as items I am objecting to, I don't want to send out matters of public records, pleads [sic] of public regard. I didn't want to send out purely internally administrative documents.

(Id. at 15-16).

Rega's counsel responded that their primary concern was that the District Attorney was refusing to produce relevant documents by claiming (improperly, they argued) that the documents were protected from disclosure under the work product doctrine. (Id. a 16-17). The District Attorney replied:

> I can certify that everything remotely relating to negotiations or any type of plea agreement or anything has already been included. There's nothing in what I'm calling work product that has anything to do with plea negotiations.
> What I'm saying is the judge's order presently basically ordered me to turn over anything with those people's names on it. I just don't think that's good for anyone.

(Id. at 18).

Because Rega's counsel had not had the opportunity to review the discovery packet that the District Attorney had sent to them, the PCRA court continued the hearing. It directed Rega's counsel to review the packet and then file a response to the motion for protective order. (Id. at 21-22).

Rega's counsel subsequently filed an opposition brief to the motion for a protective order in which it was argued:

> The nature of the documents produced raises doubts about the thoroughness with which the District Attorney's Office conducted its search for information relevant to Mr. Rega's Brady claim. For instance, the package contains no handwritten notes of any meetings with the individuals identified in the [PCRA court's discovery order] even though District Attorney Burkett represented at the August 4th hearing that the files in his possession contained a large quantity of notes in his own writing.
>
> It is not surprising that the completeness of the Commonwealth's production is suspect… [T]he District Attorney's Office should not remain the arbiter of what does and does not constitute additional Brady material.

(Pet's Opposition to Commonwealth's Mot. for Protective Order in Commonwealth v. Rega, No. CP-33-CR-26-2001, at 3 (C.P. Jefferson Co., Aug. 14, 2009), SCR No. 253).

The PCRA court scheduled a hearing for September 22, 2009 "for the Court to entertain arguments and/or testimony with respect to the allegedly non-discoverable materials." (Order in Commonwealth v. Rega, No. CP-33-CR-26-2001 (C.P. Jefferson Co. Aug. 21, 2009), SCR No. 254). It ordered that prior to the hearing:

> [t]he district attorney shall submit to the Court for *in camera* review any and all documents within the purview of the Court's earlier discovery order but to which the Commonwealth objects as non-discoverable.

(Id.)

At the beginning of the September 22, 2009 hearing, which the District Attorney and Rega's counsel attended in person, the PCRA court stated:

> I have sitting in front of me Mr. Burkett's notes and other documents to which he objected or asked for protective order, as well as this was delivered to chambers several weeks ago by the DA's secretary. There was a copied file that has a posted [sic] note this was previously provided. So there are some notations, those documents are there. I did review every one of the documents in-camera between the date they got here and this morning – actually about 12:15 a.m. this morning…. I looked through them again last night so I'm very well familiar with the documents now.

9

(9/22/09 Hr'g Tr. (ECF No. 15-2) at 3-4). The PCRA court explained that it looked at each document generally to see what it contained and specifically to see if there was anything in it relevant to Rega's Brady/Napue-related requests. (Id. at 6).

Rega's counsel objected to the court's *in camera* review and argued that they needed to review the documents themselves to apply "an advocate's eye" to them. (Id. at 10-11). The District Attorney countered that Rega's goal was to receive a new trial, and if his counsel reviewed the disputed documents they would see his work product. (Id. at 11-12). As the District Attorney had observed at the prior hearing:

> Mr. Rega ultimately wants a new trial. The record I'm talking about with these people's names – and I'm telling the Court and defense counsel – none of these documents – they constitute my perceptions of the case. They summarize the people's testimony, and those summaries come from the same police reports that the defense has. But they summarize my thoughts and everything about this case. Clearly, [Rega] is not entitled to that.
> And, ultimately, if you want a new trial, let's assume for now that you would get one, you're not entitled to know my thoughts, my perception on things about this case. That's what that material is. But there's nothing in it about plea negotiations.

(8/4/09 Hr'g Tr. (ECF No. 15-1) at 19-20). At the September 22, 2009 hearing, the District Attorney once again opposed the assertion that Rega's counsel needed to review the disputed documents themselves:

> I vehemently object to that. For one thing, I do want to say this, [Rega's counsel] brought up a good point when he said, well, technically wouldn't it be work product if Mr. Burkett had Susan Jones tell him I won't cooperate unless I get a deal. I can tell you this: I did not construe any such factual matter as being work product and turned over anything that had anything to do with facts dealing with plea agreement, plea negotiations, anything to do with that is turned over. So, there is nothing dealing with plea negotiations or anything that I'm trying to hide behind work product, I can say that.

(9/22/09 Hr'g Tr. (ECF No. 15-2) at 13).

The District Attorney also stated:

10

> I believe I have turned over anything that had to do with plea negotiations or could remotely be viewed as being relevant to that issue…. The original discovery order signed by the Court … basically told the Commonwealth to turn over anything regarding certain named individuals and the Commonwealth took that order to mean if you looked at that order literally … its essence would order the Commonwealth to turn over any piece of paper within the file that had a person's name on it over to [Rega] whether it was relevant for plea negotiations or not. It basically said any correspondence, notes, memoranda, et cetera relating to and then it would name a co-defendant or a witness. That being the case, the Commonwealth filed a protective order believing that was overly broad and inappropriate and would also include many things that would never be discoverable under the law like work product. I believe the Court has now seen what's in there and basically every piece of paper that had a defendant's name, that was my instruction to my staff, we're going to photocopy everything that has any of those names on it and much of it sure is irrelevant to anything here. Some of it is work product, some of it is notes, some of it is my musing. There is case law that says work product, things that have the theories, the opinions, the analysis of the trial attorney is clearly work product and therefore not discoverable. That being the case I believe everything I have turned over to the Court for its in-camera examination is either work product or utterly irrelevant for the issue that the Court just outlined. [Rega's counsel] agreed that that is the main issue plea negotiations. I believe everything that even has a semblance of dealing with negotiations which was documented in the file has been turned over.

(Id. at 7-8 (emphasis added)).

The PCRA court decided that conducting an *in camera* review was the appropriate course to follow. It informed Rega's counsel that it would go through each document provided by the District Attorney's Office and "tell you what I see … that way you'll have an idea of what's in here. If you say wait, I want to know more about that, we can discuss it as each thing comes up." (Id. at 14-15). The PCRA court proceeded to review and give a description of each document. Rega's counsel made numerous inquiries about the documents. (Id. at 15-52). During the course of its review, the PCRA court determined that Rega's counsel should receive a copy of some of documents. (Id. at 32-33, 37). It concluded that most of the documents were not discoverable.

When Rega's counsel requested that they be permitted to review certain documents for themselves to see if the documents contained "some notation about plea negotiations or

11

discussion," the PCRA court explained to them that "it's not there.... This is straight forward trial stuff." (Id. at 41). When Rega's counsel persisted, the PCRA court stated that a "first year law student" could tell that there was nothing regarding "leniency, deals or anything like that" in the documents at issue. (Id. at 41; id. at 51-52).

After all the documents had been examined by the PCRA court, Rega's counsel asked for clarification about whether the District Attorney produced for the *in camera* review responsive documents from files other than his office's capital case file. (Id. at 46 (Rega's counsel: "It appears that the only file we are talking about it the capital file. Based on what I've heard it sounds like there is nothing else except Mr. Burkett's capital file notes.")). The PCRA court observed that "the first bunch of documents" it reviewed *in camera* "refer to the Rega rape case[,]" and asked the District Attorney: "Is this the capital case here? I assumed when I reviewed it was all the cases." (Id. at 47; see id. at 49 (PCRA court: "I assumed it was everything because … right on top was the rape stuff, but maybe it wasn't and I would certainly want you be clear on that."). The District Attorney replied: "[w]e reviewed both files, but I will make sure." (Id. at 48). The PCRA court instructed the District Attorney to review the rape file again to confirm that all responsive documents were produced to Rega's counsel or for an *in camera* examination. (Id. at 48-49).

Rega's counsel next asked about each Witness's separate criminal case files. The District Attorney stated, as he had explained in subparagraph 4(h) of the motion for a protective order, that some of those files had been destroyed as part of his office's periodic purging procedures. Rega's counsel requested that they have the opportunity to review those files that had not been purged because "those also could contain Brady material[.]" (Id. at 50). The PCRA court stated: "I understood of those cases that went to trial you [the District Attorney] have already produced

12

everything that is in them or it is public record." (Id. at 50). The District Attorney responded: "Yes." (Id.) The PCRA court instructed him to "make sure on that too." (Id.)

At the end of the hearing, the PCRA court entered an order in which it granted the motion for a protective order "to the extent that all documents reviewed other than those given are hereby protected from further discovery." (Id. at 52). It also instructed:

> And of course, Mr. Burkett, you will have to check the other cases to determine whether this is all of it. If it's not contact us immediately … by letter or some document to put in the file to determine whether there is anything else in the other cases involving Susan Jones especially, but it can also be Trooper Davis or any other person connected with both cases.

(Id.)

Rega does not contend that the District Attorney failed to comply with the specific directives the PCRA court gave at the end of the September 22, 2009 hearing. He does not state that there were any additional discovery disputes in the PCRA case.

In October 2011, the PCRA court issued an Opinion in which it denied Rega's Brady/Napue-related claims on the merits. Commonwealth v. Rega, No. CP-33-CR-26-2001, slip op. at 20-27 (C.P. Jefferson Co. Oct. 27, 2011), SCR No. 318). It does not appear that Rega challenged the PCRA court's discovery-related decisions in his subsequent appeal to the Supreme Court of Pennsylvania. (Br. of Appellant in in Commonwealth v. Rega, No. 642 CAP (Pa. May 22, 2012); Reply Br. of Appellant in Commonwealth v. Rega, No. 642 CAP (Pa. Oct. 1, 2012)).

### C. Rega Did Not Establish Good Cause for Discovery in This Case

Upon consideration of the parties' filings and upon review of the relevant state court record, this court concludes that Rega did not establish good cause for discovery in this federal

13

habeas case. Contrary to what Rega states in his motion for discovery, the District Attorney did comply with the PCRA court's discovery order. He produced those documents from his office's files that were subject to the discovery and submitted for an *in camera* review those other documents that fell within the order's broadly-worded scope, but which he contended were not subject to discovery. The PCRA court reviewed those documents *in camera* to determine whether any of them should be produced and concluded that most of them should not be. The PCRA court also instructed the District Attorney to check and make sure that all responsive documents were gathered from his office's files for the rape case and each Witness's criminal case (which had not been purged). It indicated it would be available to resolve any future discovery disputes. Thus, the process afforded to Rega in the PCRA case handled and resolved (or would have resolved) all of Rega's discovery requests regarding his Brady/Napue-related claims and he is not entitled to conduct any additional discovery in this case.

In their response to Rega's motion for discovery, the respondents demonstrated that Rega's statements that the District Attorney did not comply with the PCRA court's discovery order, that he "moved for a protective Order to prohibit disclosure of the very information sought herein[,]" and that the PCRA court granted the motion for a protective order "and specifically denied disclosure of the exact discovery" he now seeks before this court (Pet's Mot. for Disc. (ECF No. 7) ¶¶ 4, 6) are inaccurate. In his reply, Rega suggests that the District Attorney must have withheld relevant documents from his counsel and the PCRA court. (Pet's Reply to Resp. to Pet's Mot. for Disc. (ECF No. 17) ¶ 4). This unsupported accusation is rejected. To accept it would be to conclude that the District Attorney violated his obligations under the Rules of Professional Conduct and lied to the PCRA court and Rega's counsel. On the record before this court, there is no basis whatsoever for the court to reach such a conclusion.

Rega contends that subsequent events in the PCRA proceeding demonstrate that the statements the District Attorney made to his counsel and the PCRA court during the discovery process were not credible. This contention is rejected. During the PCRA proceeding, Rega was given access to each Witness's trial attorney's case file. Rega does not direct this court to any document contained in those files that conflict with the statements the District Attorney made to his counsel or the PCRA court. In addition, the PCRA court presided over a nine-day evidentiary hearing at which numerous individuals testified, including two of the Witnesses (Jones and Fishel), each Witness's trial attorney (Fred Hummel, John Ingros, David Inzana, Mark Wheeler, and Timothy Morris), and the lead investigator in Rega's capital case (Officer Louis Davis). If any information had been revealed during the hearings that called into question the District Attorney's certification that he had produced all documents relevant to Rega's Brady/Napue-related discovery requests, Rega should have pursued the matter before the PCRA court at that time. He did not. Also, there is no indication that the PCRA court questioned the statements the District Attorney had made to it. Following the evidentiary hearings, it issued a lengthy Opinion in which it explained that it found as a fact that the District Attorney's Office did not "promise[] nor foster[] the expectation of leniency" with respect to any of the Witnesses. (Commonwealth v. Rega, No. CP-33-CR-26-2001, slip op. at 20 (C.P. Jefferson Co. Oct. 27, 2011), SCR No. 318). Accordingly, the PCRA concluded, the District Attorney's Office "had nothing to disclose in that regard." (Id.)

## III. Conclusion

Because Rega did not establish good cause for discovery, the court will deny his motion.[2]

An appropriate order will be entered.


Date: August 18, 2014	BY THE COURT,

*/s/ Joy Flowers Conti*
Joy Flowers Conti
Chief United States District Court Judge

---

[2] The court ordered the parties to brief whether the rule established in Cullen v. Pinholster, — U.S. — , 131 S.Ct. 1388 (2011), would bar it from considering any new evidence developed during discovery when it reviews Claims I and II. Because the court determined that Rega failed to demonstrate good cause for discovery, the court need not decide what impact the decision in Cullen has on Rega's request for discovery.